## ABIJAH HUNT *v.* H. J. WRIGHT.

1. CONSTITUTIONAL LAW. *Legislative procedure. Power of courts.*

    Courts are bound to accept as valid legislative enactments, all such acts as are duly authenticated in the mode prescribed by the constitution, and which do not on their face bear evidence of a disregard of it. They cannot go behind such acts and consult the journals, or otherwise inquire if the legislature complied with the rules of procedure prescribed by the constitution for its observance. *Ex parte Wren,* 63 Miss., 512.

2. AMENDING LAWS. *Reference to title. Act* 1892. *Adopting code. Const.* 1890, § 61.

    The act of April 2, 1892 (Laws, p. 60), by which the code of 1892 was adopted, was not reviving or amending a law "by reference to its title only" within the prohibition of § 61, constitution 1890, since that has reference only to the ordinary case of reviving or amending in the strict sense of the terms, and not to the adopting of a code or parts of a code.

3. LEGISLATURE; DISREGARD OF CONSTITUTION. *Power of courts. Const.* 1890, §§ 68, 70.

    While § 68, constitution 1890, providing that "no revenue or appropriation bill shall be passed during the last five days of the session," and § 70 providing that "no revenue bill shall become a law except by a vote of at least three-fifths of the members present and voting," are obligatory on the legislature, its disregard of them is beyond the reach of the courts, which deal with what the legislature does, not with what it should have done or omitted in matters of procedure.

4. ADOPTION OF CODE 1892. *Absence of engrossed bills. Const.* 1890, §§ 59, 60.

    The adoption of the code of 1892 by the act of April 2, 1892, by reference to duplicate copies of its several chapters, the chapters not being enrolled or engrossed, did not violate §§ 59 and 60 of the constitution of 1890, which declares how bills shall originate, and that no law shall be passed except by bill. Said act has all the forms and requirements of a bill, and the adoption of the chapters merely by reference and description is not prohibited by the constitution.

FROM the circuit court of Sharkey county.

HON. J. D. GILLAND, Judge.

In July, 1892, the appellant, Hunt, being desirous of selling intoxicating liquors in Sharkey county in quantities not less than one or more than five gallons, tendered to appellee, Wright, sheriff and tax-collector of said county, the sum of $300, prescribed as a privilege tax upon said occupation by the act of 1890, and also tendered the collector's commissions, and demanded the issuance of the privilege tax license, which appellee refused to issue. Thereupon Hunt filed this petition for a mandamus against said tax-collector to require him to receive said money and issue the license.

By § 12 of the act of April 2, 1892, approving, adopting and enforcing the code of 1892, immediate operation was given to certain chapters of the code, among others, to chapter 37, entitled "Dram-shops," and chapter 108, entitled "Privilege Taxes." It is not contended in behalf of appellant that he is entitled, under the facts stated in his petition, to the license if these chapters were validly enacted and put in force. It will be seen that the effect of the petition is to test the constitutionality of the adoption of the code of 1892, and especially with reference to the above mentioned chapters.

Section 1 of the said act of April 2, 1892, commonly known as the enforcing act, is as follows:

"*Be it enacted by the legislature of the state of Mississippi*, That the annotated code of public statute laws of the state of Mississippi, prepared under authority of the constitutional convention of eighteen hundred and ninety, by R. H. Thompson, Geo. G. Dillard and R. B. Campbell, and reported to the legislature by them, and adopted by the two houses of the legislature, the draft in duplicate whereof, as adopted, being now in the hands of the clerk of the house and the secretary of the senate respectively, be, and the same is hereby, adopted and declared to be the code of Mississippi, to take effect and be of force as therein provided; and the duplicates thereof shall immediately, upon the approval of this act by

the governor, be deposited in the office of the secretary of state."

The several provisions of the constitution of 1890 which it is claimed were violated or disregarded by the legislature in adopting the code and enacting the above mentioned chapters, are sufficiently indicated in the opinion. The petition alleges that the duplicate copies of the code referred to in § 1 of the said enforcing act are printed copies, which have been erased, interleaved and altered to such an extent that it is almost impossible to ascertain definitely the meaning of the legislature; that said duplicates bear no sort of resemblance to enrolled or engrossed bills; that they do not, in fact, correspond with each other in every respect; that § 2 of the introductory chapter of the code, as it appears in one of the duplicate copies, provides for the repeal of all former repugnant statutes on the first day of *November*, 1892, while the other draft of the code provides for such repeal on the first day of *July*, 1892.

The defendant demurred to the petition, and from a judgment sustaining the demurrer and dismissing the petition Hunt appeals.

*Murray F. Smith* and *J. Hirsh*, for appellant.

The tendency of all recent constitutions has been to restrict the power of legislatures to embrace in one bill incongruous matters, or to pass laws embracing different subjects and affecting varied interest to such an extent as to render it impossible for members to act intelligently upon them. The constitution of 1890 is in line with these tendencies, and contains numerous provisions new to the organic law of this state. From sections 60 to 70, inclusive, will be found various restrictions upon the legislature not heretofore in our constitutions. In *Ex parte Wren*, 63 Miss., this court has said: "We would not shrink from the investigation of all questions of fact on the existence of which any statute depends."

The whole constitutional scheme contemplates that the governor is a constituent part of the legislature, and that he has a right to have measures presented in the shape of a bill, with a title clearly indicating the subject-matter to be passed on by him. See *People* v. *Bowen*, 21 N. Y., 517.

The legislation sought to be invalidated violates every one of the above sections. There was no bill putting the dram-shop chapter into effect according to the intent of the constitution. The title of the enforcing act is not a title indicating clearly the subject-matter to be legislated on. Nor did the constitutional convention of 1890 authorize a code to be prepared such as has been adopted.

The constitutional provisions are not merely directory. They are in line with no less than twenty-six state constitutions. Sutherland on Stat. Const., §§ 76, 79.

The legislature, by resorting to a single enforcing act, placed it beyond the power of the governor to approve a portion of the laws or reject a portion, for the constitution gives no such power, except in cases of appropriation bills. It is impossible to tell which copy of the code the governor acted upon, or how he got possession of one of these so-called authentic copies of the code. Section 1 of the enforcing act, did not contemplate that these copies should ever leave the hands of their respective custodians until the act should be approved by the governor.

It is true there are a few cases which hold that certain things may become a part of a law by being referred to in it, but there cannot be many cases in which this rule can apply. Cooley on Con. Lim., 169. The cases of *Dew* v. *Cunningham*, 28 Ala., 466; *Pulford* v. *Fire Department.*, 31 Mich., 458, and *Loan Association* v. *Richards*, 21 Ga., 592, do not warrant the court in going so far as to hold the legislation under consideration valid.

The court will take judicial notice that the legislature adjourned on the day the enforcing act was passed. Sutherland, Stat. Const., § 181. The passage of the revenue and appro-

priation bills within the last five days of the session was un-
constitutional.    Const. 1890, § 68.

*T. M. Miller*, attorney-general, for appellee.

The objection that the chapters on dram-shops and privi-
lege taxes were passed within the last five days of the session
cannot aid the appellant, even if it be conceded that section
68 of the constitution is mandatory on the legislature, since
laws regulating the traffic in ardent spirits, though incidentally
including revenue, are not revenue laws in any legal or con-
stitutional sense.    *Burch* v. *Mayor*, 42 Ga., 596.    That such
provisions are not mandatory, see 51 Cal., 624; 27 Ohio St.,
102; *Washington* v. *Page*, 4 Cal., 388.

The contention that nothing can be declared law which is
not actually embraced in an enrolled bill is not maintainable.
It is only required that the matter which is to be law shall
have the assent of the law-making power, and that such as-
sent shall be expressed in the form of a bill, duly authenti-
cated and enrolled.    Thus, the statute which incorporated a
military company by reference to its constitution and by-
laws was held valid, notwithstanding said constitution and
by-laws were not read in the two houses of the legislature as
parts of the statute.    Cooley, Con. Lim., 168, 169, citing
*Dew* v. *Cunningham*, 28 Ala., 466; *Bibb County Loan Associa-
tion* v. *Richards*, 21 Ga., 592; *Pulford* v. *Fire Department*,
31 Mich., 458.

The framers of our constitution were familiar with the
existing practice of making general as well as particular en-
actments by reference only.    The constitution of 1890 placed
no limitation upon this, except that found in section 61, de-
claring that no law shall be revived or amended by reference
to its title only.    If the constitution of 1890 prohibits the
adoption of the code by reference, the constitution of 1869
did also, and the code of 1880 is invalid.    The consequences
of such a holding are appalling enough to put an end to the
discussion.

The variance between the duplicates is immaterial. It is evident from the connection that *November* should be read *July*, as this conforms to the manifest intention and enactment of the legislature. I submit that the appeal is without merit.

Argued orally by *Murray F. Smith*, for appellant.

CAMPBELL, C. J., delivered the opinion of the court.

This case presents the question whether chapters 37 and 108 of the code of 1892 are in force. One is the *"dram-shop"* chapter, and the other is entitled *"privilege taxes."* It is admitted that an act to adopt and make of force the code was duly passed and approved on April 2, 1892, which declared the above-mentioned chapters in force, but the claim is that this was ineffectual, because the chapters were adopted by their titles only, and without their contents being set forth, and because of divers specific objections, having reference to the method of procedure by the legislature in dealing with the several chapters constituting the code; and that these particular chapters were passed within the last five days of the session, and did not receive three-fifths of the votes of the members of each house voting; that there is no enrolled bill in existence containing any part of said chapters, nor any such bill signed by the presiding officers of the two houses and the governor, and authenticated as the constitution requires; that there is doubt and uncertainty as to what is the code adopted, and material variance in certain particulars between two authorized versions of it, but it is not alleged that these versions differ as to the two chapters mentioned.

Most of the objections urged by appellant are fully met by the decision of this court in *Ex parte Wren*, 63 Miss., 512, in which it was declared that the legislature, as a co-ordinate department of the state government, invested by the constitution with legislative power, is not subject to supervision and revision by the courts as to those rules of procedure

prescribed by the constitution for its observance, because, while those rules are all *authoritative* and *mandatory* to legislators, who are sworn to note and observe them, they exhaust themselves upon legislators, and are not for the consideration of courts, which cannot explore legislative journals to see if all the directions of the constitution were observed, but must accept as legislative enactments, duly passed as prescribed by the constitution, all such acts as are duly authenticated as such in the mode prescribed by it. The opinion of the court in that case contains a full presentation of our views on the important question discussed, and with its reasoning and conclusion we are still content. It seems, too, that the constitutional convention of 1890 adopted those views, for all of the provisions of the constitution of 1869 with reference to which that case was decided, were re-adopted as part of the constitution of 1890, without any indication of purpose to introduce a new rule on this important subject; and, while the new constitution contains new provisions restrictive of legislative power, and designed to guard against evils in legislative proceedings, there is nothing to suggest that the courts are to *pry into* the record of the proceedings of the legislature to ascertain if it regarded rules prescribed for its observance while about its business. So far as the new constitution contains the provisions of the old, it must be held to have adopted with them the view of this court with reference to them as announced in the case mentioned.

The question is: Do the new provisions alter the rule heretofore announced? Those relied on are all the sections from number sixty to seventy-one inclusive. Those particularly mentioned as supporting the claim of appellant are section 60, which declares that "no law shall be passed, except by bill;" section 61, "No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length;" section 68, "Appropriation and revenue bills shall, etc., . . . and no such bills shall be passed during the last five days of the ses-

sion;" section 70, "No revenue bill shall become a law, except by a vote of at least three-fifths of the members of each house present and voting;" section 71, "Every bill shall have a title, and the title ought to indicate clearly the subject-matter," etc.

All the provisions, old and new, relating to this matter, are contained in article 4 of the constitution of 1890. That article is headed "*Legislative Department*," and is subdivided with a heading to each subdivision. Among these is found, "*Rules of Procedure*," and under this subdivision is grouped sections 54 to 77, inclusive, including all from which it is contended that the code chapters must be pronounced invalid as having not been adopted. Among these provisions are certainly some that are not mere rules of procedure addressed to and ending with the members of the legislature. An example of this is found in section 61: "No law shall be revived or amended by its title only," etc. An act of the legislature disregarding this, would be disregarded by the courts. That would present the question of the validity of a completed enactment. Another example is section 63: "No appropriation bill shall be passed . . . which does not fix definitely the maximum sum thereby authorized to be drawn from the treasury." Another is section 64: "No bill . . . to make appropriations . . . out of the state treasury shall continue in force more than six months after," etc. Section 75 is: "No law of a general nature, unless therein otherwise provided, shall be enforced until sixty days after its passage." These provisions pertain to the operation of acts of the legislature, passed with due regard to all the requirements of the constitution, and would seem to be out of place among rules of procedure. With those matters courts must deal, but their duty as to them, as in all other cases, commences after the termination of legislative action. Then the duty of the judicial department begins. It is not an overseer of the legislature during its labors, but it takes its completed work and tries it by the

constitution, starting with the conclusive and irrebuttable presumption, that, as to all the requirements of that instrument, they who swore to observe it, did so. Every act which bears on its face evidence of disregard of the constitution, invites, and must receive, the condemnation of all who are called on to deal with it, and that is the test.

The adoption of the code by the act of April 2, 1892, was not invalid, as prohibited by section 61, which says: "No law shall be revived or amended by its title only," etc. This section is aimed at a well-known evil in legislation. But, adopting and declaring of force the code, or certain chapters of it, was not *reviving* or *amending* within the meaning of this section. Besides, it appears that the matter of the code was inserted at length and considered *in extenso.* The code does not *amend* or *revive* any law by reference to its title only. Nearly all of the code, excluding new subjects, was law before, in the very form in which it reproduces it, and would have continued in full force, if the code of 1892 had not been adopted; and, wherein former laws are amended by it, it was competent to adopt it by an act referring to it as an existing thing. This was not *reviving* or *amending* laws by reference to title only, in the meaning of section 61, which has no application to adopting a code or parts of one, but to the ordinary case of *reviving* or *amending* a law in the strict sense of these terms. All familiar with the subject know the particular evil intended to be corrected by this provision, and it is plain that the prohibition does not embrace the case we are now considering, for it is not within the evil, and, therefore, not within the remedy.

The declaration of section 68 that no appropriation or revenue bill shall be passed during the last five days of the session, has reference to being passed by the legislature, and does not refer to approval by the governor. The two houses pass bills. The governor approves, and he may approve at any time when the legislature is in session. While the provision of section 68 is obligatory on the legislature, its dis-

---

Opinion of the court.

---

regard of it is beyond the reach of courts, which are not keepers of the consciences of legislators, and deal only with what they do, and not what they should have done or omitted. We would not be understood as holding that the "*dram-shop*" law is a revenue bill or law, but, if it was, it would not be affected by what is alleged as to when it was passed. The fact that it was passed within the last five days of the session, and did not receive three-fifths of the votes of members voting, if it be a fact, is not a matter of which courts will take cognizance.

If members of the legislature violate their oaths by disregarding the plain directions of the constitution, the courts are powerless to redress the wrong, except as to matters apparent in their finished action. The constitution, as to mere rules of procedure prescribed for the legislature, is committed to the members individually and collectively, and the houses are intended as a mutual check, and the governor on both, and courts will not inquire into the antecedents of legislative enactments, and have no claim to be present at the parturition. Their duty begins when legislative travail is over.

That there is no enrolled bill on "*dram-shops*" and "*privilege taxes*" makes no difference, since none such is required by the constitution, which has nothing about enrolled or engrossed bills. It is undeniable that there is an enactment adopting and putting in force as a code certain printed or written chapters. That enactment has all the forms and requirements of law as prescribed by the constitution, and all is made law by it which it could and does declare to be.

A bill is a written or printed draft of a proposed law. The constitution, without defining, says, "Bills may originate in either house," etc., and has various provisions for dealing with them (section 59); and in section 60 says, "No law shall be passed except by bill"—*i. e.*, except by conforming to the preceding requirements as to passing bills.

It is true that journals are required to be kept, and yeas and nays are to be entered on them as provided, but that is

not that courts may scrutinize the daily doings of the legislature. The purpose is widely different. The houses have complete control of their journals, both as to what they shall contain and their publication, which shows that matters of mere procedure are committed to the keeping of legislators, all of whom are bound by a most solemn oath to observe and maintain the constitution in all its provisions; and, in order to insure familiarity with the instrument thus committed to their charge, each member is required, on qualifying, to swear that he will, soon after being sworn as a member, ".carefully read (or have read to him) the constitution, and will endeavor to note, and as a legislator to execute, all the requirements thereof imposed on the legislature."

We have already said that the adoption of the chapters by reference and description as existing is not within the prohibition of section 61, and therefore they became law as declared.

Questions may arise as to what was embraced in the adopting act. The identity and authenticity of what is alleged to be the text of the code may arise, and perhaps present difficulty when they arise, but it is not claimed that there is any doubt or uncertainty as to the "dram-shop" law or that on the subject of "privilege taxes," and any other does not concern the appellant, and cannot avail him in this appeal. It is for the courts, as questions arise, to ascertain what is the law. The printed code is evidence, but it is not the best evidence. Resort will be made to the "duplicate" described in the act of April 2, 1892, adopting the code, in the office of the secretary of state, in case of alleged inaccuracy as to the text of the printed code. If, in any case, it shall be found that the "duplicates" mentioned by the adopting act do not agree, it will be time then to consider the effect of the discrepancy. "Sufficient unto the day is the evil thereof." None of the objections made to the chapters of the code under consideration are valid, and all combined are ineffectual.

*Affirmed.*