## EVANS *v.* STATE.

[83 South. 167, In Banc. No. 20811.]

LANDLORD AND TENANT. *Inducing Tenant to breach contract.*

The mere hiring of a tenant, who had already broken his contract with his landlord before he had entered upon such contract, was not a violation of Code 1906, section 1146 (Hemingway's Code, section 874), penalizing efforts to persuade tenant to breach his contract.

APPEAL from the circuit court of Marshall county. HON. C. LEE CRUM, Judge.

LESTER G. FANT, for appellant.

Our contention is, in regard to the written contract, first, that the contract is too indefinite to be binding under the section of the code proceeded under, which is as follows: Section 1146, Code 1906.

"Enticing servants: If any person shall wilfully interfere with, entice away, knowingly employ, or induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises, before the expiration of his contract without the consent of the employer or landlord, etc. . . .

The written contract did not specify any certain time but was indefinite in its terms. It does not state the terms of the contract as to wages, etc., nor the time it is to run but leaves it indefinite. In addition to this, the prosecuting witness testimony as has been shown above, stated that this contract had been abrogated. The next contract which is alleged to have been made in the field in October or November, 1918, as a share cropper, for the year 1919 had not begun.

Dora Oglesby had not begun the service for the year 1919 and consequently the appellant could not have been convicted for enticing her away before 1919 begun. See case of *Hendrix* v. *State,* 79 Miss. 368, where the court holds that there cannot be any enticing before the contract begins, nor any breach of a contract before it begins.

Notwithstanding the fact that the defendant had a right to be told exactly what the offense was that he was charged with, he was forced to go to trial at this time and stay throughout the trial without any election on the part of the state, for which contract he was going on. Whichever contract they were going on, the defendant was entitled to be discharged because the written contract, so called, had been finished and abrogated, and the new contract had not yet begun.

The charge granted the state is objectionable for many reasons. For the convenience of the court we quote the charge here: ''The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that Dora Oglesby was under a contract as a laborer with J. W. Henderson, and that before said contract had expired, the defendant, A. B. Evans, either wilfully interfered with, enticed away, knowingly employed, or induced said Dora Oglesby to leave the employment of said J. W. Henderson, then you will convict said defendant and the form of your verdict should be: ''We, the jury, find the defendant guilty as charged.''

The charge is vitally defective because it attempts to state facts and does not state all the facts, and charges that before said contract had expired the defendant either wilfully interfered with, enticed away, knowingly employed or induced said Dora Oglesby to leave the employment of J. W. Henderson, ''then you will convict said defendant,'' leaving it to the jury to

convict this defendant even though the employment had not yet begun.

There is absolutely no doubt in the statement of the case by the prosecuting witness that the written contract had been abandoned and that neither he nor Dora Oglesby considered themselves bound by it, and the oral contract had not yet begun, so it is very apparent that appellant was convicted without a syllable of testimony to show his guilt and should have been granted his discharge by the court at the conclusion of the testimony of the state and a peremptory instruction should have been given in view of the record in this case absolutely disclosing that there could not be any guilt, we respectfully request the court to reverse this case and dismiss the affidavit against appellant here.

*Ross A. Collins,* attorney-general, for the state.

In our opinion, this appeal presents one simple proposition of law. There is no doubt but that the appellant in this case knew of the relations existing between Mr. Henderson and Dora Oglesby, and so knowing same, he deliberately moved her from Mr. Henderson's place to his place.

As we understand the record, the question of law presented by this appeal is: Does the certificate of employment, herein before set out, coupled with Dora's relations with Mr. Henderson on November 23, 1918, constitute such a contract as is contemplated by section 1146 above quoted?

Respectfully submitted.

Cook, J., delivered the opinion of the court.

In December, 1916, one Dora Oglesby entered into a written contract with J. W. Henderson, a land-

holder in Marshall county, whereby she bound herself
and children to work with Mr. Henderson for four or
five years.  The contract was in these words:

Potts Camp, Miss., 12—20—16.

"This is to certify that Dora Oglesby has contracted
with J. W. Henderson for her and her children to
work with said J. W. Henderson for four or five years,
said Dora Oglesby and children to work by the day.

her

DORA X OGLESBY."

mark

It seems that Dora and the children remained on
Mr. Henderson's place until the fall of 1918.  The evi-
dence discloses that Dora did but little actual work;
she cooked for and carried food to  the children at
work in the field.  In the fall of 1918, according to the
evidence of the state, the written contract was abrogated
by the parties, and a verbal contract made, whereby
Dora. Oglesby bound herself and children to cultivate
Mr. Henderson's land on shares.

On or about the 23d day of November, 1918, Dora
left Mr. Henderson and moved on the plantation of
Mr. Evans, the appellant.  The evidence for the state
also shows that Mr. Henderson told Mr. Evans that he
had contracted with Dora to work a share crop on his
land in 1919.  It will be seen that Mr. Evans hired
Dora before the beginning of Dora's 1919 contract with
Mr. Henderson.

The prosecution of this case is based upon section
1146, Code of 1906 (section 874, Hemingway's Code),
which is as follows:

"If any person shall willfully interfere with, entice
away, knowingly employ, or induce a laborer or renter
who has contracted with another person for a specified
time to leave his employer or the lease premises, before
the expiration of his contract without the consent of

the employer or landlord, he shall, upon conviction, be fined not less than twenty-five dollars nor more than one hundred dollars, and in addition shall be liable to the employer or landlord for all advances made by him to said renter or laborer by virtue of his contract with said renter or laborer, and for all damages which he may have sustained by reason thereof. The provisions of this section shall apply to minors under contract made by a parent or natural guardian.''

In this connection it may be said that the evidence does not show that the appellant ''willfully interfered with,'' or ''enticed away,'' Mr. Henderson's tenant. The evidence shows without doubt that Dora left Mr. Henderson on her own accord and before she had entered upon her alleged contract for the year 1919; that she sought Mr. Evans, and told him that she would not go back to Mr. Henderson, and so Mr. Evans made a contract with her to work for the year 1919.

The question for our decision is about this: Does the mere hiring of a tenant, who has broken his contract with his landlord before she had entered upon the alleged contract, constitute a violation of section 1146, Code of 1906? The section of the Code was designed to stabilize the agricultural industry, the chief industry of the state, and to this end the legislature penalized all efforts of one farmer to persuade the tenants of another farmer to ''jump their contracts.'' The agricultural labor of the state is overwhelmingly of African descent. They are credulous and fickle, and are easily persuaded, and thus for the common good this statute was enacted.

At various times this court has been called upon to construe these statutes. In *Hendricks* v. *State,* 79 Miss. 368, 30 So. 708, the court put a strict construction upon a similar statute in favor of the defendant. In *Alford* v. *Pegues,* 92 Miss. 561, 46 So. 76, the present statute was under review. In that case a

civil suit was instituted against the alleged offender of the statute. In that case the court said: ''There is no question in the world of any enticing away of Alford's laborer or tenant in this case.''

The same may be said of this case. In this case, as in the case just mentioned, the tenant had terminated her contract with her landlord, and she had never entered upon her alleged contract. It thus appears that this court has strictly construed this statute, and rigidly held each case within the literal terms of the statute, and always in favor of the accused.

The tenant in the present case had, of her own accord and for reasons satisfactory to herself, decided she would not carry out her contract. She had left her landlord definitely and for good. She sought the appellant and asked for employment, and, after ascertaining that she would not carry out her contract, appellant employed her.

This court in *State* v. *Armstead,* 103 Miss. 790, 60 So. 778, Ann. Cas. 1915B, 495, declared section 1147, Code of 1906, to be in violation of section 15 of our state Constitution, as well as the Constitution of the United States. The section under review in that case was a part of the scheme to protect employers of labor, and while the decision does not necessarily control this case, yet it does preserve inviolate the right of contract, even with an ignorant share cropper or lessee.

We do not believe that it was the intention of the legislature to penalize the acts of the appellant disclosed by this record. He merely made a contract with a tenant who had abandoned her contract before she had entered upon it, without the advice or suggestion of appellant. The contract which it was alleged that appellant made with the tenant was made before the tenant ''had ever'' entered upon her contract with her former landlord, and contracts under such cir-

cumstances as this must be strictly construed against the penalty. *Alford* v. *Pegues,* 92 Miss. 558, 46 So. 76.

*Reversed and dismissed.*